# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

KENNETH HARRINGTON,

    Plaintiff,

v.

PAUL WELLS,

    Defendant.

CIVIL ACTION NO.: 2:13-cv-103

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at the Federal Correctional Institute ("FCI") in Jesup, Georgia, filed a Bivens action[1] alleging that Defendant Paul Wells ("Defendant"), a factory manager at the Jesup FCI UNICOR facility, retaliated against him for requesting unpaid wages and for filing three grievances against Defendant. (Doc. 1.) Defendant filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, which the Court denied. (Docs. 20, 28.) Upon the close of discovery, Defendant filed a Renewed Motion for Summary Judgment, and Plaintiff filed a Response. (Docs. 69, 82.) For the reasons which follow, Defendant's Renewed Motion should be **DENIED**.

## BACKGROUND[2]

Plaintiff, an inmate employed at Jesup FCI's UNICOR factory, claims Defendant retaliated against him for engaging in constitutionally protected speech on two separate occasions. First, Plaintiff alleges that Defendant reduced his employment status from full-time

---

[1] Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[2] The following facts are construed in the light most favorable to Plaintiff as they must be at this stage.

to part-time in retaliation for Plaintiff's request of unpaid wages.[3] According to Plaintiff, a series of events beginning on August 5, 2012, culminated in the loss of his full-time position in the UNICOR factory on August 22, 2012.[4] Plaintiff claims Defendant threatened to fire him on August 5, 2012, when he first requested unpaid wages. (Doc. 1, p. 5.) On August 20, 2012, Plaintiff contacted Defendant's supervisor, Associate Warden Debra Forsyth, to report that Defendant had not granted his request. (Doc. 1-1, p. 5.) On the morning of August 22, 2012, Plaintiff and Defendant met to discuss the unpaid wages request. (Id.) Plaintiff asserts that, during the meeting, Defendant became angry and declared "you might end up getting this money, but you will regret it. I will stay after you and I will get you." (Id. at p. 6.) Later that day, Defendant approved Plaintiff's request but informed Plaintiff that his status would drop from full-time to part-time because Defendant had hired new UNICOR employees.[5] (Id. at pp. 6–7.)

Second, Plaintiff alleges that Defendant cut his pay in half because Plaintiff filed three grievances against him.[6] Plaintiff filed these grievances on August 29, 2012. (Doc. 1-1, pp. 3, 15–16, 27–28.) On September 12, 2012, Defendant directed Donnie Roberson, the factory

---

[3.] Plaintiff requested wages in the amount of $29.89 for unpaid vacation and holiday pay and $21.40 for unpaid overtime. (Doc. 1-1, p. 4.)

[4] In his affidavit, Plaintiff alleges that Defendant's first act of retaliation occurred "on or about August 16, 2012." (Doc. 1, p. 5.) In other documents submitted into evidence, he alleges this event occurred on August 22 and August 23, 2012. (Doc. 1-1, pp. 5, 23.) In his affidavit, Defendant alleges the change occurred on August 22. (Doc. 20-1, p. 7.) A "Position Change" form officially placing Plaintiff on part-time status was signed on August 22, 2012. (Doc. 20-2, p. 24.) Because both parties claim (at least once) that the event happened on August 22, 2012, and this date is supported by other documents in the record, the Court believes Plaintiff intends to cite this date.

[5] Plaintiff and Defendant dispute this fact. According to Plaintiff, he began his full-time position after Defendant hired these employees. (Doc. 1-1, p. 7.)

[6] Plaintiff's grievances alleged that Defendant retaliated against him for his initial unpaid wage request by demoting Plaintiff from a full-time position to a part-time position, for failing to pay Plaintiff several months' administrative pay, and for failing to pay Plaintiff overtime wages for the Fourth of July holiday. (Doc. 1-1, pp. 3, 15–16, 27–28.)

foreman, to reduce Plaintiff's pay from "grade two," a grade paying $0.92 per hour, to "grade four," a grade paying $0.46 per hour, because Plaintiff no longer had the responsibilities to warrant compensation at a "grade two" level. (Doc. 82, p. 15; Doc. 1, p. 2.) Plaintiff's pay was reduced on September 14, 2012. (Doc. 1, pp. 2, 7.)

## DISCUSSION

Defendant asserts in his Motion that Plaintiff cannot sustain his First Amendment retaliation claim against him. Specifically, Defendant avers that Plaintiff failed to establish a causal connection between Plaintiff's protected speech and Defendant's conduct because Plaintiff has not shown Defendant was subjectively motivated to retaliate against him. Defendant also asserts he is entitled to qualified immunity for two reasons. First, Defendant maintains he would have changed Plaintiff's job status and decreased his pay absent Plaintiff's protected speech. Second, Defendant asserts that Plaintiff's claim fails because he suffered only a de minimis inconvenience to the exercise of his First Amendment rights.

As set forth below, I disagree that Plaintiff has failed to establish a genuine dispute as to his claims. I also disagree that Defendant is entitled to qualified immunity. As a result, Defendant's Motion should be **DENIED**.

**I.    Standard of Review**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing

3

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## II. Qualified Immunity Analysis

The United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Stough v. Gallagher, 967 F.2d 1523, 1525 (11th Cir. 1992). In determining whether a defendant is entitled to qualified immunity, the Supreme Court stated: the first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation

is established, the question whether the right was clearly established must be considered on a more specific level. Saucier v. Katz, 533 U.S. 194, 200 (2001).[7] The Court determined that the first component of the bifurcated test requires a finding that the officer's alleged conduct violated a constitutional right. Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). Upon finding, in the light most favorable to Plaintiff, that the alleged actions exhibited a constitutional violation, the Court adhered to the doctrine that the right allegedly violated must be clearly established. Id.; Anderson v. Creighton, 483 U.S. 635, 640 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202; Wilson v. Layne, 526 U.S. 603, 615 (1999).

Neither party disputes that Defendant was acting within the scope of his discretionary authority when he eliminated Plaintiff's full-time position and changed Plaintiff's pay grade. Accordingly, the burden shifts to Plaintiff to show: (1) violation of a constitutional right; and (2) that the right violated was clearly established at the time of the violation. Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013). Plaintiff has shown that Defendant's alleged actions violated a constitutional right because "[t]he First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (quoting Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003)). Plaintiff has also shown that his right to request unpaid wages and file grievances was clearly established. "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's

---

[7] The Court has clarified, however, that these steps need not be analyzed sequentially. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

5

administrators about the conditions of his confinement." Id. (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008)).

However, even if an official violates a clearly established constitutional right, he may properly invoke the defense of qualified immunity if his conduct was only partially motivated by an unconstitutional objective. See Mt. Healthy v. Doyle, 429 U.S. 274 (1979). If the record shows that an official would have taken the same action regardless of his improper motive, then the official's actions were lawful, and he is entitled to qualified immunity. Foy v. Holston, 94 F.3d 1528, 1534 (11th Cir. 1996) (citing Mt. Healthy, 429 U.S. at 286–87). Nevertheless, when an official presents an alternate legal explanation for his conduct, summary judgment is only appropriate if "the undisputed summary judgment facts establish mixed motives, as opposed to pretext." Pattee v. Ga. Ports Auth., 477 F. Supp.2d 1253, 1267 (S.D. Ga. 2006). (citing Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1296 (11th Cir. 2000)). A defendant can establish a case of mixed motives "where it is undisputed that (a) [an] objectively valid [reason] exist[s] for [his conduct], and (b) [his conduct] was motivated, at least in part, by the objectively valid reason." Id. "But where (b) is disputed, the case retains the possibility of being a pretext case— objectively valid reasons for termination exist but did not motivate the termination." Id. "[I]t is not sufficient . . . to establish that there exists a lawful basis for a reasonable [officer to engage in improper conduct]. Rather. . . [the officer] himself must have been actually motivated, at least in part, by that lawful basis." Stanley, 219 F.3d at 1297 n.29.

Defendant argues he would have changed Plaintiff's status from full-time to part-time and would have reduced his pay regardless of whether Plaintiff requested unpaid wages or filed grievances. To demonstrate that he would have changed Plaintiff's status from full-time to part-time absent any exercise of free speech by Plaintiff, Defendant points to a recently instituted

6

UNICOR hiring policy. This policy encourages factory managers to hire more part-time workers and to prioritize employment of inmates whose release date is within two years.[8] (Doc. 69-8, p. 2.) Defendant asserts that, in an effort to promote this hiring policy, he hired two new UNICOR employees at the time he granted Plaintiff's request, triggering a decreased demand for Plaintiff's continued full-time position in the factory.[9] (Doc. 69, p. 12.) Defendant argues that Plaintiff has presented no evidence showing that Defendant's decision to reduce his employment status from full-time to part-time was not based upon the hiring policy. Id.

In response, Plaintiff argues that, while the UNICOR hiring policy existed, it did not actually motivate Defendant's decision to change his work status from full-time to part-time. To dispute Defendant's assertions, Plaintiff points to the pronounced temporal proximity between his protected conduct and the loss of his full-time position. The Eleventh Circuit has held that evidence of close temporal proximity between protected conduct and alleged retaliatory action is sufficient to show that the Defendant's decision was motivated by retaliatory motives. Gibbons v. McBride, No. CV114-056, 2015 WL 5017021, at *24 (S.D. Ga. Aug. 21, 2015) (citing Bumpus v. Watts, 448 F. App'x 3, 7 (11th Cir. 2011)); Akins v. Fulton Cty., Ga., 420 F.3d 1293, 1305 (11th Cir. 2005). In addition, courts have rejected qualified immunity defenses when the alleged retaliatory actions occurred in close proximity to protected conduct.[10]

---

[8] The purpose of this policy is to provide more inmates with employment as UNICOR employment has been shown to reduce recidivism and to give inmates nearing their release dates work experience to prepare them for integration back into their communities. (Doc. 69-9, p. 3.)

[9] Plaintiff claims that he attained his full-time position after Defendant hired the two new employees, disputing Defendant's contention that factory demand shifted at the same time Defendant granted Plaintiff's wage request. (Doc. 1-1, p. 7.) Aside from Plaintiff's and Defendant's testimony, the record does not indicate the date on which the new employees were hired. Thus, a dispute of material fact remains on this issue.

[10] Compare Patee, 477 F. Supp.2d at 1267–68 (court rejected defendant's argument that it was entitled to qualified immunity after whistleblower plaintiff was fired shortly after reporting defendant's deficient security practices to Homeland Security task force ), with Stanley, 219 F.3d at 1280 (court granted

According to Plaintiff, Defendant threatened to fire him on August 5, 2012, if he did not abandon his unpaid wages request. After Plaintiff forwarded his request to Defendant's supervisor, Defendant then told Plaintiff he would regret pursuing the request. The record shows that Defendant then changed Plaintiff's status from full-time to part-time the same day he approved the unpaid wages request. By citing Defendant's prior alleged threats regarding Plaintiff's unpaid wages request and pointing to the striking temporal proximity between his protected conduct and Defendant's alleged retaliatory actions, Plaintiff has created a genuine dispute of material fact whether the UNICOR hiring policies actually motivated Defendant to change Plaintiff's status from full-time to part-time. When these facts are viewed in a light most favorable to Plaintiff, a reasonable jury could conclude that the hiring policy was merely a pretext for revoking Plaintiff's full-time status. Therefore, summary judgment for Defendant on Plaintiff's first claim of retaliation is inappropriate.

Defendant also argues that he was motivated by an objectively valid reason to reduce Plaintiff's pay from a "grade two" to a "grade four" after Plaintiff filed grievances. Defendant points out that Plaintiff's employment file indicated he worked as an orderly, a "grade four" position paying $0.46 per hour, while Plaintiff was being paid $0.92 per hour at a "grade two" level. (Doc. 69-3, p. 22.) Defendant claims he noticed this discrepancy while reviewing the file to prepare his answers to Plaintiff's grievances. (Doc. 69-2, p. 8.) Accordingly, Defendant maintains he is still shielded from liability for both of Plaintiff's claims because two objectively valid reasons motivated his decisions: the UNICOR hiring policy and the discovery of the error in Plaintiff's file.

---

qualified immunity to defendant supervisor, noting that derogatory statements made by plaintiff against defendant in 1993 were too attenuated to eliminate the possibility that defendant was at least partially motivated to fire Plaintiff based upon a 1997 incident of misconduct).

Plaintiff disputes that Defendant was motivated by an objectively valid reason to reduce his pay. Though Defendant argues an oversight he discovered in Plaintiff's employee file motivated him to change Plaintiff's pay grade, Plaintiff argues that the pay grade listed in his file was in fact correct. (Doc. 23-1, pp. 2–5.) While Plaintiff does not dispute that "grade four" is the appropriate pay grade for orderlies or that his employee file listed his position as an orderly, he alleges that he also worked as a chemical clerk and back-up tool room clerk to justify his compensation at a "grade two" level.

Rene Benitez, another inmate and UNICOR employee, swore in an affidavit that Plaintiff performed these duties until September 2012 when Plaintiff's pay was reduced. (Doc. 82, pp. 17–18.) Plaintiff avers that Defendant both knew of and concurred with his performance of these additional duties and therefore knew that Plaintiff's "grade two" pay was proper. Plaintiff points to an e-mail sent from Defendant to foreman Donnie Roberson to demonstrate that Defendant was aware that Plaintiff performed the additional duties. The e-mail stated:

> Donnie, I was reviewing Harrington [sic] employment file gathering information for a response to a request for remedy. I have noticed that Harrington is a grade two working in the position of orderly that is a grade four. He was given the grade two when he was that backup tool room clerk and the chemical clerk. He no longer has those responsibility [sic] that supports that grade. Please submit that proper paperwork to support the grade of his current occupation. Also advise him if he wishes to get that grade back we welcome him to apply for positions on the floor that support that grade.

(Id. at p. 15.) According to Plaintiff and Benitez, Plaintiff retained the additional duties of chemical clerk and back-up tool room clerk until Defendant sent the e-mail to Roberson. Therefore, in Plaintiff's view, Defendant's e-mail to Roberson triggered the elimination of the duties associated with his "grade two" pay, thus prompting the pay reduction. According to Defendant, however, these positions were eliminated months before Plaintiff filed grievances.

9

He claims that the e-mail was simply an effort to correct the discrepancy in Plaintiff's employee file.

The precise meaning of Defendant's e-mail to Roberson is debatable when the facts are viewed in a light most favorable to Plaintiff. A reasonable jury could find, based upon Plaintiff's and Benitez's sworn declarations, that Plaintiff performed the additional duties of a chemical clerk and a backup tool room clerk up until Defendant sent the e-mail. Therefore, a genuine dispute of material fact exists regarding whether Plaintiff's "grade two" pay was correct, and thus, whether a file discrepancy existed and motivated Defendant to cut Plaintiff's pay in half. Therefore, it would also be inappropriate to grant summary judgment in favor of Defendant based on qualified immunity for Plaintiff's second claim of retaliation.[11]

### III. Retaliation Claim

"To state a First Amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." Farrow, 320 F.3d at 1248. Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." Id. To prevail on a retaliation claim, "the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Mosley, 532 F.3d at 1276 (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

---

[11] Defendant also argues that he is entitled to qualified immunity because Plaintiff suffered only a "de minimis" inconvenience to the exercise of his First Amendment rights as a result of Defendant's conduct. Defendant's argument is misplaced because the level of inconvenience placed upon Plaintiff's First Amendment rights addresses an issue on the merits and does not affect the qualified immunity analysis. See Quezeda v. Roy, No. 14 Civ. 4056 (CM), 2015 WL 5970355, at *22 n.2 (S.D.N.Y. Oct. 13, 2015) (stating that a "de minimis" effect on the exercise of First Amendment rights does not entitle officers to qualified immunity, but to dismissal on the merits).

Both parties agree that Plaintiff has met his burden on the first prong of his retaliation claim because the type of speech at issue is constitutionally protected. "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Finch, 637 F.3d at 1212 (quoting Farrow, 320 F.3d at 1248). "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Id. (quoting Mosley, 532 F.3d at 1276). The parties dispute, however, whether Plaintiff has alleged sufficient facts to establish that he suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech, as required by the second prong.[12]

Defendant argues that, because Plaintiff was allegedly overcompensated during the months prior to his complaints and grievances, eventually received his requested unpaid wages, and retained a full-time position receiving "grade two" pay the month following his pay reduction, Defendant's alleged retaliatory conduct had only a "de minimis" effect on Plaintiff's exercise of free speech. (Doc. 69, p. 18.) Defendant contends that because Plaintiff was eventually restored to the position he held before the exercise of his First Amendment rights, Plaintiff did not suffer sufficient adverse action such that Defendant's alleged retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech.

Viewing the evidence in the light most favorable to Plaintiff, Defendant is incorrect that Plaintiff did not suffer adverse consequences. First, Plaintiff disputes that he was overcompensated. As discussed above, Plaintiff and Benitez aver that Plaintiff performed the duties of chemical clerk and backup tool room clerk during the disputed months and that his

---

[12] Though Defendant's brief does not directly address this issue, Defendant presents arguments directed toward the second prong of Plaintiff's retaliation claims in his argument for qualified immunity.

11

compensation at a "grade two" level was, therefore, correct. Second, Plaintiff claims that his unpaid wage request was only granted because he forwarded the issue to Defendant's supervisor, thus triggering Defendant to retaliate against Plaintiff by changing his status from full-time to part-time. Third, although Plaintiff's full-time status and "grade two" pay were eventually restored, the possibility that he suffered adverse consequences in the interim—such as a loss of income—is not eliminated. Further, the temporary loss of one's job could deter a person of ordinary firmness from engaging in similar speech in the future. Because Plaintiff disputes that he was overcompensated, claims that the approval of his unpaid wage request triggered retaliatory conduct against him, and the parties do not dispute that Plaintiff lost full-time pay at a "grade two" level for at least one month, a reasonable jury could find that Plaintiff suffered adverse consequences and that Defendant's actions would deter a person of ordinary firmness from engaging in free speech.

Finally, to survive summary judgment, Plaintiff must establish that a causal relationship exists between his protected speech and the retaliatory action. Bennett, 423 F.3d at 1250. To show this causal connection, Plaintiff must show that his protected conduct was a "motivating factor" behind Defendants alleged misconduct. Mosley, 532 F.3d at 1278. Specifically, "[p]laintiff must identify a sequence of events from which a retaliatory motive can be inferred, notwithstanding other non-retaliatory motives the defendant may harbor." Eisenberg v. City of Miami Beach, 1 F. Supp.3d 1327, 1344 (S.D. Fla. 2014) (citation and internal quotation marks omitted). To resolve the subjective motivation issue, courts rely on the burden-shifting formula set forth in Mt. Healthy, 429 U.S. 274. Under the Mt. Healthy formula,

> [o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail . . . on summary judgment.

Mosley, 532 F.3d at 1278 (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 399 (6th Cir.1999)).

In conjunction with the burden-shifting formula, courts also consider the temporal proximity between a plaintiff's exercise of free speech and the adverse effect in gauging a causal connection. See Bumpus, 448 F. App'x at 7 (finding district court erred by prematurely dismissing inmate's First Amendment retaliation claim because inmate sufficiently alleged causation "given the short amount of time between his appeal of the disciplinary decision and the alleged retaliatory actions"); Akins, 420 F.3d at 1305 (finding "close temporal proximity" between a special meeting at which former employees in county's purchasing department complained to the commissioner of perceived irregularities in the county's bidding process and adverse employment actions taken against the same employees by their supervisor was sufficient to permit reasonable jury to conclude that incidents were causally connected); Lozman v. City of Riviera Beach, 39 F. Supp.3d 1392 (S.D. Fla. 2014) (finding adequate circumstantial evidence of causation because there was "a very close temporal connection" between the timing of the plaintiff's expressive speech—public criticism of the integrity of various municipal officials and formal lawsuit—and the city's exertion of an extended string of legal pressures against the plaintiff); Smith v. Bell, No. 06–60750, 2008 WL 868253, at *2 (S.D. Fla. Mar. 31, 2008) (stating "there can be no assumption that eighteen months after a police officer is called names by an arrestee, that the officer's alleged false testimony at a trial where a defendant is partially acquitted meets the casual connection requirement" and concluding "[t]here must be a greater

temporal proximity or other evidence of a causal connection to link the protected conduct occurring [eighteen] months prior to the adverse action, as would be the case in most retaliation type analyses") (citing Davis v. Coca–Cola Bottling Co., 516 F.3d 955, 978 (11th Cir. 2008), and Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000)).

Defendant argues Plaintiff failed to produce evidence showing that the fluctuation in his job status and pay grade was connected to any retaliatory motive of Defendant. Defendant avers that his decisions were motivated by the UNICOR hiring policy discussed above and his discovery of a file discrepancy in Plaintiff's employee file. He also argues that his supervisor's approval of both these decisions confirm he lacked any retaliatory motive. (Doc. 69, p. 5.) Defendant further contends that his approval of subsequent requests by Plaintiff for full-time positions and subsequent increases in Plaintiff's pay grade demonstrate that he lacked a retaliatory motive. (Doc. 69-1, pp. 8–9.) Defendant finally argues that, even if he did harbor a retaliatory motive toward Plaintiff, he cannot be held liable because he would have changed Plaintiff's status from full-time to part-time and reduced Plaintiff's pay regardless of Plaintiff's unpaid wage request and grievances.

Plaintiff maintains Defendant would not have changed his job status or pay grade but for the exercise of his First Amendment rights. First, Plaintiff again points to the chronology of his protected speech and Defendant's alleged retaliatory actions. According to the facts alleged by Plaintiff, Defendant twice warned Plaintiff to cease the pursuit of his unpaid wages request and then changed Plaintiff's status from full-time to part-time the same day Defendant approved the unpaid wages request. The record also shows that Defendant cut Plaintiff's pay in half shortly after receiving Plaintiff's grievances. Plaintiff also disputes Defendant's contention that Plaintiff's subsequent promotions imply a lack of retaliatory motive. According to Plaintiff,

14

Defendant refused to sign the forms necessary to approve the later changes to Plaintiff's pay grade and status.[13] (Doc. 82, p. 4.) Plaintiff argues that this evidence creates a genuine dispute of material fact regarding whether Defendant possessed a retaliatory motive and was motivated by that retaliatory motive.

The issue of intent is a question for the trier of fact. Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995) (citing Swint v. City of Wadley, Ala., 51 F.3d 988, 1000 (11th Cir. 1995)). On the one hand, a reasonable jury could find, based upon the stated UNICOR hiring policies and Defendant's contentions regarding his review of Plaintiff's employee file, that Defendant would have changed Plaintiff's status and reduced his pay regardless of whether Plaintiff requested unpaid wages or filed grievances. However, on the other hand, viewing the facts in a light most favorable to Plaintiff, a reasonable jury could also conclude that Defendant's reference to the UNICOR hiring policy and his review of Plaintiff's employee file were mere pretext and that he reduced Plaintiff's time and pay solely based on Plaintiff's exercise of free speech. This conclusion could be supported by Plaintiff's averments that he received prior threats from Defendant in relation for his unpaid wages request, Plaintiff's and Benitez's declarations that Plaintiff was properly paid at a "grade two" level up until Defendant reduced his pay, as well as the temporal proximity between Plaintiff's protected conduct and Defendant's actions. Accordingly, the Court concludes that a genuine dispute of material fact exists regarding whether Defendant possessed a retaliatory motive and whether Defendant was motivated by that retaliatory motive to change Plaintiff's status from full-time to part-time and to reduce his pay.

---

[13] At least two out of three forms documenting Plaintiff's subsequent job changes and increased pay do not appear to bear Defendant's signature. It is therefore unclear whether Defendant acquiesced in these changes.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion for Summary Judgment be **DENIED**.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Furthermore, it is not necessary for a party to repeat legal arguments in objections.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 10th day of November, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA