# In the United States District Court
# For the Southern District Of Georgia
# Brunswick Division

KENNETH HARRINGTON,           *
                              *
            Plaintiff,        *               CIVIL ACTION NO.: 2:13-cv-103
                              *
      v.                      *
                              *
PAUL WELLS,                   *
                              *
            Defendant.        *

## O R D E R

Presently before the Court are Defendant Paul Wells'
("Wells") Objections to the Magistrate Judge's Report and
Recommendation dated November 10, 2015.  Dkt. No. 85.  After an
independent and *de novo* review of the entire record, Wells'
Objections, dkt. no. 87, are **OVERRULED**, and the Court **CONCURS**
with and **ADOPTS** the Magistrate Judge's Report and Recommendation
as the opinion of the Court, as supplemented herein.  Wells'
Renewed Motion for Summary Judgment, dkt. no. 69, is **DENIED**.

## I.   Background

On August 2, 2013, Plaintiff, an inmate at the Federal
Correctional Institute ("FCI") in Jesup, Georgia, filed this
action contesting certain conditions of his confinement, pursuant
to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of

Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Dkt. No. 1.
Specifically, Plaintiff asserts that Wells, a factory manager at
the Jesup, Georgia, FCI UNICOR facility, retaliated against him
for engaging in constitutionally protected speech on two separate
occasions. Dkt. No. 1, p. 2. First, Plaintiff alleges that
Wells reduced his employment status from full-time to part-time
on August 22, 2012, in retaliation for Plaintiff's request of
unpaid wages. Id. Second, Plaintiff alleges that Wells reduced
his pay by half on September 14, 2012, because Plaintiff filed
three grievances against him. Id.

Wells responds that his actions were motivated by legitimate
and lawful reasons. First, Wells claims he reduced Plaintiff's
employment status from full-time to part-time because a shift in
the factory's demand for labor, caused by the hiring of two
additional employees, eliminated the need for his full-time
position. Dkt. No. 69, p. 4. Wells also points to a UNICOR
policy encouraging the utilization of more part-time employees to
explain the shift in Plaintiff's job status. Id. Second, Wells
claims he reduced Plaintiff's pay by half because he discovered
an error in Plaintiff's employee file. Dkt. No. 69-2, pp. 8-9.
Wells avers that, while reviewing Plaintiff's employee file in
response to Plaintiff's grievances, he noticed Plaintiff had been
receiving "grade two" pay, although the position listed in
Plaintiff's file qualified for only "grade four" pay. Id.

On February 14, 2014, Wells filed a Motion to Dismiss, or in the Alternative, for Summary Judgement, asserting the defense of qualified immunity. Dkt. No. 20. Magistrate Judge James E. Graham recommended that Defendant's Motion to Dismiss be granted, concluding that Plaintiff had failed to state a prima facie case for retaliation. Dkt. No. 25. Specifically, Magistrate Judge Graham concluded that Plaintiff failed to establish that he suffered more than a "de minimis" injury or that Wells' alleged acts would likely deter a person of ordinary firmness from exercising his First Amendment rights. Id. at pp. 6-7. Magistrate Judge Graham based this recommendation, in part, on Plaintiff's overcompensation, based upon his receipt of "grade two" pay for a position meriting only "grade four" pay. Id. Magistrate Judge Graham also noted that the approval of Plaintiff's unpaid wage request and his receipt of those wages further minimized his injury. Id.

Magistrate Judge Graham also concluded that Plaintiff failed to establish causation. Id. at p. 6. First, Magistrate Judge Graham noted that following Wells' alleged initial threats on August 5, 2012, Plaintiff received a promotion from part-time to full-time on August 14, 2012. Id. at pp. 5-6. He also noted that Plaintiff's demotion from full-time to part-time status occurred between August 21, 2012, and August 22, 2012, before Defendant's second alleged threats on August 22, 2012. Id.

Magistrate Judge Graham also based his recommendation on Wells'
explanation that Plaintiff's August 22, 2012, demotion from full-
time to part-time was based upon Wells' hiring of two additional
employees, which eliminated the need for Wells' full-time
position. Id. at p. 5.

Plaintiff responded to Magistrate Judge Graham's Report and
Recommendation on April 25, 2014. Dkt. No. 27. Plaintiff first
objected to the Magistrate Judge's recommendation that Plaintiff
had been overcompensated. Id. at pp. 1-2. Plaintiff argued
that, in addition to performing his regular duties as an Orderly,
he performed the duties of a back-up tool room clerk and MSDS
chemical clerk, justifying the advanced "grade two" pay listed in
his employee file. Id. According to Plaintiff, prior records in
his employee file accurately recorded these additional
responsibilities, but, due to administrative errors, subsequent
records failed to document the additional duties. Id. at pp. 1,
3-4.

Plaintiff also objected to Magistrate Judge Graham's
recommendation that Plaintiff failed to establish a causal link
between his request of unpaid wages and the loss of his full-time
position. Id. at pp. 1-2. Based upon evidence that Wells
promoted Plaintiff after the alleged threats, Magistrate Judge
Graham had concluded that Plaintiff failed to show that Wells
harbored a retaliatory intent. Id. Plaintiff responded that his

promotion did not indicate an absence of retaliatory intent. Id.
Plaintiff claimed that, after Wells' alleged threats on August 5,
2012, Wells mistakenly believed that Plaintiff had abandoned his
unpaid wages request.[1] Id. at p. 2. According to Plaintiff,
when Wells discovered that Plaintiff had contacted Wells'
supervisor, Associate Warden Forsyth, in pursuit of his unpaid
wages request, Wells then eliminated Plaintiff's full-time
position. Id. at p. 2; Dkt. No. 1-1, p. 26. Similarly,
Plaintiff objected to the Magistrate Judge's recommendation that
Wells' recent hiring of additional UNICOR employees and a shift
in factory demand triggered Plaintiff's demotion to part-time on
August 22, 2012. Dkt. No. 27, p. 2. Plaintiff responded that
the new employees began work between August 12, 2012, and August
13, 2012—several days before Plaintiff received his initial
promotion to full-time. Id.

After review of the entire record, the Magistrate Judge's
Report and Recommendation, and Plaintiff's objections, the Court
denied Wells' Motion for Summary Judgment. Dkt. No. 28. The
Court determined that Wells failed to establish that he is
entitled to qualified immunity because it "has long been
established in the Eleventh Circuit that the 'First Amendment

---

[1] In Wells' Objection to the Magistrate Judge's Report and Recommendation
dated November 10, 2015, he alleges that Plaintiff's promotion from part-time
to full-time was made in error. Dkt. No. 87, p. 15. This assertion appears
to corroborate Plaintiff's statement that the promotion is unrelated to Wells'
retaliatory intent, or lack thereof.

forbids prison officials from retaliating against prisoners for exercising the right of free speech.'" Id. at pp. 6-7; O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011). The Court informed the parties that Wells' motion for summary judgment on the merits would be entertained after Plaintiff had an opportunity to conduct discovery. Dkt. No. 28, pp. 7-8.

After the parties conducted discovery, Wells filed a Renewed Motion for Summary Judgment on March 25, 2013. Dkt. No. 69. Wells first asserted that Plaintiff's claim fails on the merits. Id. at pp. 11-12. Wells averred that Plaintiff failed to present evidence that Wells was subjectively motivated to retaliate against Plaintiff for requesting unpaid wages and filing grievances. Id. In the alternative, Wells presented two arguments renewing his claim of qualified immunity. Wells first argued that even if he was subjectively motivated to retaliate against Plaintiff in part, he is entitled to qualified immunity because he would have taken the same actions regardless of whether Plaintiff engaged in free speech. Id. at pp. 13, 15-16. Second, Wells argued that he is entitled to qualified immunity because his actions resulted in only a "de minimis" inconvenience to Plaintiff's exercise of free speech. Id. at p. 18. Plaintiff filed a Response in Opposition to Defendant's Renewed Motion for Summary Judgment. Dkt. No. 82.

In his Report and Recommendation on November 10, 2015, dkt. no. 85, Magistrate Judge R. Stan Baker recommended that the Court deny Defendant's Renewed Motion for Summary Judgment. Magistrate Judge Baker recommended Wells' qualified immunity arguments be rejected, finding that genuine disputes of material fact exist regarding whether Wells was actually motivated by legitimate reasons to eliminate Plaintiff's full-time position and decrease his pay from a "grade two" to a "grade four." Id. at pp. 8, 10. Magistrate Judge Baker also recommended a finding that a genuine dispute of material fact exists regarding whether Plaintiff suffered a "de minimis" injury to the exercise of his exercise First Amendment rights. Id. at pp. 11-12.

Wells filed a lengthy Objection to the Magistrate Judge's Report and Recommendation. Dkt. No. 87. In his Objection, Wells avers that Magistrate Judge Baker misconstrued the record and erroneously concluded that genuine disputes of material fact exist. Id. at p. 1. Wells argues that he is entitled to summary judgment because Plaintiff's factual assertions are implausible and, therefore, fail to create any genuine disputes of material fact. Id. Wells also objects to the Magistrate Judge's Report and Recommendation on nine additional grounds. Id.

**II. Discussion**

In a First Amendment retaliation suit, "[o]nce [a] plaintiff shows that his constitutionally protected speech was a

'substantial' or 'motivating factor' in his adverse treatment by the [defendant], the [defendant] should be given an opportunity to show 'by a preponderance of the evidence that [he] would have reached the same decision . . . even in the absence of the protected conduct.'" Stanley v. City of Dalton, Ga. 219 F.3d 1280, 1293 (11th Cir. 2000) (citing Mt. Healthy City School Bd. of Educ. v. Doyle, 429 U.S. 274, 287, (1977)). "When deciding a motion by the defendant for judgment as a matter of law . . . in which the defendant has proffered [legitimate] reasons for [his] actions," indicating he would have reached the same decision in the absence of Plaintiff's protected conduct, the Court must then "determine whether the plaintiff has cast sufficient doubt on the defendant's proffered [legitimate] reasons to permit a reasonable factfinder to conclude that the [defendant's] proffered 'legitimate reasons were not what actually motivated its conduct[.]'" Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (citing Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 605 (11th Cir.1994)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

Wells objects to Magistrate Judge Baker's recommendation that genuine disputes of material fact exist regarding whether Wells was motivated by legitimate reasons to change Plaintiff's full-time status and reduce his pay grade. Wells avers that a UNICOR policy encouraging the increased hiring of part-time employees, as well as a shift in factory demand, motivated his decision to change Plaintiff's job status from full-time to part-time. Dkt. No. 69, p. 8. Wells similarly argues that an error in Plaintiff's employee file motivated him to reduce Plaintiff's pay by half. Id. at pp. 7-8.

Plaintiff, however, disputes whether these legitimate reasons actually motivated Wells' conduct. First, Plaintiff points to the temporal proximity between his protected speech and Wells' conduct. Dkt. No. 23-1, p. 1. Plaintiff avers that the UNICOR hiring policy did not motivate Wells' decision to eliminate his full-time position, because Wells changed Plaintiff's job status on the same day he approved the unpaid wages request after previously warning Plaintiff to abandon the request and threatening to "get him" if Plaintiff continued to pursue the unpaid wages. Id.; Dkt. No. 1-1, pp. 7, 26; Dkt. No. 20-2, p. 24. Plaintiff also argues that a shift in factory demand did not motivate Wells' decision to eliminate Plaintiff's full-time position, swearing that the additional employees hired by Wells began work on August 12-13, 2012, before Plaintiff's

initial promotion to full-time on August 15, 2012.[2] Dkt. No. 27, p. 2. Plaintiff further argues that a file error did not motivate Wells' decision to reduce his pay grade. In support, Plaintiff submitted his own declaration, as well as one from another UNICOR employee, that Plaintiff performed additional duties justifying his "grade two" compensation. Dkt. No. 82, pp. 17-18. Relatedly, Plaintiff points to other documents in his employee file which appear to contain administrative errors, arguing that the file incorrectly documented his job title, as opposed to his pay grade. Dkt. 23-1, pp. 2-5.

Therefore, while Wells proffers legitimate reasons for his conduct, Plaintiff presents evidence disputing whether these legitimate reasons actually motivated Wells' conduct. While a reasonable jury could believe that Wells was motivated, at least in part, by the UNICOR hiring policy, the hiring of additional employees, a shift in factory demand, and an error in Plaintiff's employee file, a reasonable jury could also believe, based upon Plaintiff's presentation of contrary evidence, that the aforementioned reasons were mere pretext. See Combs, 106 F.3d at 1538 ("[O]nce the district court determines that a reasonable jury could conclude that the [defendant's] proffered reasons were not the real reason for its decision, . . . judgment as a matter of law is unavailable.").

---

[2] The record does not indicate when the new employees were hired.

Magistrate Judge Baker accurately applied the summary judgment standard to the facts presented by the parties and, as the Court must at this stage, viewed the factual disputes in a light most favorable to Plaintiff. As a result, the Court adopts Magistrate Judge Baker's recommendation that genuine disputes of material fact exist as to whether Wells was subjectively motivated by legitimate reasons to change Plaintiff's full-time status and reduce his pay grade.

In addition to his objection that no genuine disputes of material fact exist, Wells sets forth nine additional grounds on which he objects to Magistrate Judge Baker's Report and Recommendation. Noting that "a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge," Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009), the Court will address each of Wells' additional objections below.

### A.    Clearly Established Right

Wells challenges the Court's prior ruling on qualified immunity and Magistrate Judge Baker's recommendation based on the definition of the right at issue. Wells argues that both Magistrate Judge Baker's Report and Recommendation, as well as the Court's prior Order denying his first Motion for Summary Judgment, defined the constitutional right at issue—an inmate's right to be free from retaliation for filing grievances about the

conditions of confinement—too generally. Dkt. No. 87, pp. 1-2.
According to Wells, the right should be defined more narrowly as
"an inmate's right to avoid routine changes in prison job
assignments which were based upon prison policies because the
inmate had engaged in protected speech." Id. at p. 5. Wells
claims that he is therefore entitled to qualified immunity
because he had no notice that changing Plaintiff's status from
full-time to part-time based upon the UNICOR hiring policy and a
shift in factory demand and reducing Plaintiff's pay grade based
upon a file error would violate Plaintiff's constitutional
rights. Id. at pp. 4-5.

Wells' argument that the right at issue is not clearly
established is flawed because his definition of the right at
issue is based upon the presupposition that Wells' actions were
motivated by prison policies, a disputed issue in this case. As
discussed above, genuine disputes of material fact exist as to
whether the UNICOR hiring policy, the hiring of new employees, a
shift in factory demand, or a file error subjectively motivated
Wells' decisions. Because Plaintiff presents evidence disputing
each of the legitimate reasons Wells offers to explain his
actions, a finding that the right at issue should be defined in

such a way that incorporates the disputed facts would be improper at summary judgment.[3]

An inmate's right to be free from retaliation for filing grievances is clearly established in the Eleventh Circuit. See Wildberger v. Bracknell, 869 F.2d. 1467, 1468 (11th Cir. 1989) (noting that "[t]he Court has decided a number of cases dealing with quite similar constitutional issues" and declaring that "if [a prisoner] is able to establish that his discipline was the result of his having filed a grievance concerning the conditions of his imprisonment, he will have raised a constitutional issue"). When viewing the facts in a light most favorable to Plaintiff, the nonmovant, the Court must assume that Wells changed Plaintiff's job status from full-time to part-time and reduced Plaintiff's pay by half solely in response to Plaintiff's exercise of free speech. Under these circumstances, a reasonable

---

[3] The flaw in Wells' argument is demonstrated by the resolution of a similar issue in Stanley v. City of Dalton, 219 F.3d 1280, 1297 (11th Cir. 2000). Plaintiff, a police officer, claimed that the police chief fired him in retaliation for plaintiff's exercise of First Amendment rights. The police chief argued that he was at least partially motivated to fire the officer due to a physical altercation between the plaintiff and a fellow officer. The record in Stanley indisputably established, and both parties agreed, that the physical altercation occurred. The Court held that the police chief was entitled to qualified immunity because a reasonable officer would not have known that firing Plaintiff for both his protected speech and for the physical altercation would violate Plaintiff's rights. Here, by contrast, the record does not indisputably establish, and the parties do not agree, that the hiring policy, the hiring of additional employees, a shift in factory demand, or a file error actually motivated Wells' decisions, even in part. Therefore, incorporating these alleged facts into the qualified immunity analysis to determine whether Plaintiff's right was "clearly established" would be improper. Unlike the undisputed facts present in Stanley, the facts on which Wells relies to show that his actions were motivated by legitimate reasons are disputed.

official would have been on notice that his actions violated Plaintiff's constitutional rights. At this stage, the Court need not determine whether an inmate's right to be free from routine job changes due to prison policies is clearly established, because it is disputed whether the policies cited by Wells actually motivated his actions. Accordingly, this Court's original definition of the right, as well as Magistrate Judge Baker's reiteration of that right, was proper, and the right is clearly established.

### B. Benitez Affidavit

Next, Wells objects to the Magistrate Judge's recommendation that an affidavit containing statements by Rene Benitez, another UNICOR employee, created a genuine dispute of material fact regarding whether the pay grade listed in Plaintiff's employee file was erroneous. Dkt. No. 87, p. 6. Wells first argues that the affidavit does not address any material fact. According to Wells, the only fact addressed by Benitez's affidavit is whether Plaintiff performed additional duties, while the dispositive issue is whether Plaintiff was assigned additional duties and whether Wells was aware of those additional duties. Id. Wells' articulation of the relevant inquiry is correct. However, Wells is incorrect that Benitez's affidavit does not address that inquiry.

"Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. Evidence that Plaintiff actually performed additional duties makes it more probable that Plaintiff was assigned extra duties, as a reasonable person would not perform additional duties without being so assigned or without additional compensation. Whether Plaintiff was assigned additional duties is a fact of consequence in determining whether the pay grade listed in Plaintiff's file was actually an error. Whether the file was erroneous is a material fact in determining whether Wells was motivated by a legitimate reason to reduce Plaintiff's pay grade. While Wells claims he was unaware of the specific duties Plaintiff performed because he supervised multiple employees in the UNICOR factory, dkt. no. 87-1, p. 7, a reasonable jury could find that, as Plaintiff's supervisor, Wells would have known which jobs Plaintiff was assigned to perform and which duties he performed on a daily basis. Therefore, Benitez's affidavit addresses a material fact.

In the alternative, Wells argues that, even if the affidavit addresses a material fact, the affidavit is inadmissible because it is not based upon personal knowledge. Id. at p. 9. "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal

knowledge of the matter." Fed. R. Evid. 602. Wells is correct that portions of Benitez's affidavit may not reflect personal knowledge. For example, one portion of Benitez's affidavit states that:

> Because Harrington had straightened out the factory chemicals and put together all of the Material Safety Data Sheet (MSDS) log books and because he was responsible for updating the MSDS log books as needed[,] [Donnie Roberson and Associate Warden Forsyth] made him an Orderly/MSDS Clerk (chemical clerk). . . . Harrington worked in the Front Office as an Orderly/MSDS Clerk from that time, January 2011 until August of 2012 when Paul Wells, the Factory Manager, took him out of the Office and reassigned him to the factory floor as an Orderly.

Dkt. No. 82, p. 17. As Wells avers, these statements reflect Benitez's personal belief regarding decisions made by UNICOR factory management. Plaintiff did not present evidence sufficient to show that Benitez had personal knowledge of the decision-making process of foreman Roberson, Associate Warden Forsyth, or Wells. Therefore, statements by Benitez concerning who assigned or eliminated Plaintiff's duties are inadmissible.

However, the remainder of Benitez's affidavit relating to his personal observation of the duties performed by Plaintiff is admissible. Benitez states that he "has known and worked with [Plaintiff] for many years" and that "[Plaintiff] was still working as the MSDS Clerk and updating the MSDS log books as needed until September of 2012[.]" Id. These statements reflect

personal knowledge obtained from Benitez's personal observations. Therefore, the Magistrate Judge properly determined that at least a portion of Benitez's affidavit creates a genuine dispute of material fact as to whether Plaintiff performed and was assigned additional duties, and thus, whether the pay grade listed in his file was correct.

C.   **September 14, 2012, Email from Wells to Donnie Roberson**

Wells objects to Magistrate Judge Baker's recommendation that the meaning of an email exchanged between Wells and Donnie Roberson was ambiguous, thereby creating a genuine dispute of material fact regarding Wells' subjective motivation to reduce Plaintiff's pay grade. Dkt. No. 87, p. 10. The email stated:

> Donnie, I was reviewing Harrington [sic] employment file gathering information for a response to a request for remedy. I have noticed that Harrington is a grade two working in the position of orderly that is a grade four. He was given the grade two when he was that backup tool room clerk and the chemical clerk. He no longer has those responsibility [sic] that supports that grade. Please submit that proper paperwork to support the grade of his current occupation. Also advise him if he wishes to get that grade back we welcome him to apply for positions on the floor that support that grade.

Id. at n.5. Wells argues that the meaning of the email is unequivocal. Id. at p. 10. According to Wells, the email clearly shows that after discovering an error in Plaintiff's file, he reached out to Roberson to inquire as to Plaintiff's

current duties and, upon confirmation from Roberson that Plaintiff worked as an Orderly, requested a correction of Plaintiff's pay grade. Id. at pp. 11-12. Because neither party disputes that the proper pay grade for an Orderly is "grade four," and neither party disputes that Plaintiff's file indicated he worked as Orderly receiving "grade two" compensation, Wells argues that his interpretation of the email is the only plausible interpretation. Id. Second, Wells argues that his request in the email that Roberson "submit that proper paperwork to support the grade of [Plaintiff's] current occupation" proves he had no knowledge of which duties Harrington performed in the factory. Id. Accordingly, Wells avers that the email confirms he was motivated by legitimate reasons to reduce Plaintiff's pay grade because he could not have formed a retaliatory intent to take duties of which he was unaware. Id.

Plaintiff, on the other hand, argues that the email confirms Wells' knowledge that Plaintiff performed the additional duties associated with "grade two" pay. Dkt. No. 82, pp. 2-3. Specifically, Plaintiff points to Wells' statement in the email that "[h]e was given the grade two when he was that backup tool room clerk and the chemical clerk" to show that Wells knew about the additional duties. Dkt. No. 23-1, p. 2. Plaintiff also points to Wells' statement that "[h]e no longer has those responsibility [sic] that supports that grade" to support his

assertion that Wells unilaterally eliminated Plaintiff's additional duties.[4]  Id.

Wells is correct that his interpretation of the email is plausible, and a reasonable jury could agree with his interpretation.  However, given the timing of the email—sent shortly after Plaintiff filed grievances—and the alleged retaliatory threats prior to the email, a reasonable jury could also agree with Plaintiff's interpretation of the email. Accordingly, the Court adopts the Magistrate Judge's recommendation that, when the surrounding facts are viewed in a light most favorable to Plaintiff, the meaning of the email is unclear.

### D.  Approval and Implementation of Wells' Actions by the Associate Warden

To prevail on a First Amendment retaliation claim, Plaintiff must show that he suffered adverse action as a result of the official's allegedly retaliatory conduct.  Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008).  Wells argues that Plaintiff did not suffer adverse action as a result of Wells' conduct because Wells did not have the final authority to approve changes

---

[4]  The Court notes Wells' implicit argument that his "knowledge" of these additional duties also arose from his review of the file because a prior record in Plaintiff's file recorded his position as an Orderly/MSDS clerk. However, the Court also notes that no document in Plaintiff's file indicates that he was ever given the position of "back-up tool room clerk."  Wells' acknowledgement that Plaintiff held this duty at one time strengthens Plaintiff's argument that Wells had knowledge of the additional, undocumented duties he purports to have performed.

to Plaintiff's job status or pay grade. Dkt. No. 87, p. 14. According to Wells, because only the Associate Warden possessed final authority to implement job changes, Plaintiff failed to establish that Wells' recommendations to the Associate Warden amounted to "adverse action" against Plaintiff. Id.

To the extent Wells argues that his alleged actions were not "adverse" because he did not possess the authority to make the final changes to Plaintiff's job status and pay grade, his argument is unavailing. See Pittman v. Tucker, 213 F. App'x 867, 870-71 (11th Cir. 2007) (holding that prison officials' threats to punish Plaintiff for filing grievances were sufficient to deter a person of ordinary firmness from exercising his First Amendment rights despite officials' lack of authority to inflict the threatened punishment). Given Wells' position of authority over Plaintiff, a recommendation that Plaintiff's job status or pay grade be changed, in response to grievances filed, would likely deter a person of ordinary firmness from filing additional grievances. Therefore, provided Wells made the recommendations in response to Plaintiff's exercise of free speech, Wells' recommendations to the Associate Warden qualify as "adverse actions" against Plaintiff. To the extent Wells argues that the Associate Warden's approval of his recommendations evidenced his lack of retaliatory intent, these arguments speak to his credibility and are more properly directed toward a jury.

### E. August 15, 2012, Full-Time Promotion in Error

"[W]hen the injuries complained of are trivial or amount to no more than de minimis inconvenience in the exercise of First Amendment rights[,]" a Plaintiff's claim will fail. Bennett, 423 F.3d at 1253. Wells objects to Magistrate Judge Baker's recommendation that the temporary loss of Plaintiff's full-time pay from August 21, 2012, until October 12, 2012, resulted in more than a "de minimis" injury. Dkt. No. 87, p. 15.

In his Objection, Wells argues for the first time that Plaintiff's promotion to full-time status on August 15, 2012, was accidental. Id. Wells avers that Plaintiff therefore suffered only "de minimis" injury because he never lost any compensation to which he was entitled. Id. Wells failed to present this argument to the Magistrate Judge and therefore the Court need not consider it.[5] See McNeil, 557 F.3d at 1292.

---

[5] The Court notes, however, that Wells' argument is belied by his own Objection in which he argues that his approval of Plaintiff's full-time promotion on August 15, 2012, proves that he lacked a retaliatory motive. Dkt. No. 87, p. 11, n.6. Wells' suggestion that Plaintiff was never given a full-time position or full-time compensation of which he could be deprived is inconsistent with Wells' prior arguments.

**F.    "Same Action" Defense**

"Where the facts assumed for summary judgment purposes in a case involving qualified immunity show . . . [lawful and unlawful motivations] . . . the defendant is entitled to immunity." Foy v. Holston, 94 F.3d 1528, 1535 (11th Cir. 1996).  In his Objection, Wells points to the UNICOR policy encouraging increased utilization of part-time employees, a shift in factory demand, and a file error in Plaintiff's employee file to reiterate that these legitimate, lawful reasons motivated his conduct.  Dkt. No. 87, p. 17.  Wells argues that the Magistrate Judge's conclusion that the motivation behind Wells' actions was "debatable" establishes, at a minimum, that both lawful and unlawful motivations motivated his conduct, entitling him to qualified immunity.  Id. at p. 16.

At summary judgment, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party.  Peek-A-Boo Lounge, 630 F.3d at 1353.  As explained above, Wells' arguments are flawed because they ignore the factual disputes regarding whether legitimate reasons actually motivated Wells' conduct.  Construing these factual disputes in favor of Wells, the movant, in order to find that lawful reasons also motivated his conduct, would be improper at summary judgment.  Accordingly, Magistrate Judge Baker's framing of the factual dispute in favor of Plaintiff and

his recommendation to reject Wells' claim of qualified immunity was proper.

## G. "Person of Ordinary Firmness" Defense

To prevail on a First Amendment retaliation claim, a plaintiff must establish that the defendant's retaliatory conduct adversely affected his protected speech. Bennett, 423 F.3d at 1250. To determine whether a defendant's retaliatory conduct adversely affected a plaintiff's exercise of free speech, the Eleventh Circuit adopted the "ordinary firmness" test. Id. at 1254. The "ordinary firmness" test is an objective inquiry, in which the Court must determine whether a "defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness'" from exercising his or her constitutional rights. Id. at 1250. In Bennett, the United States Court of Appeals for the Eleventh Circuit explained that "[t]he question is not whether the plaintiff [himself] was deterred, though how plaintiff acted might be evidence of what a reasonable person would have done." Bennett, 423 F.3d at 1255 (quoting Garcia v. City of Trenton, Mo., 348 F.3d 726, 729 (8th Cir. 2003)). While the court noted that a plaintiff's actual conduct may inform the objective analysis, it cautioned that a plaintiff's subjective response to retaliatory conduct is not dispositive, declaring that "it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined

plaintiff persists in his protected activity[.]" Id. at 1252
(quoting Mendocino Envtl. Ctr. v. Mendocino Cty., 192 F.3d 1283,
1300 (9th Cir. 1999)). The Eleventh Circuit rejected the
argument that "a subjective test, under which the [plaintiff]
would have to show that [he was] actually chilled in the exercise
of [his] First Amendment rights" was the proper analysis, stating
that "[t]here is no reason to 'reward' government officials for
picking on unusually hardy speakers." Id. at 1251.

Wells objects to the Magistrate Judge's recommendation that
his alleged retaliatory conduct would have deterred a person of
ordinary firmness from exercising his First Amendment rights.
Dkt. No. 87, p. 19. Wells argues that Plaintiff's persistent
complaints and continuous filing of grievances demonstrates that
Wells' alleged retaliatory conduct would not have deterred a
person of ordinary firmness from exercising his First Amendment
rights. Id. at pp. 19-20. Wells maintains that he is therefore
entitled to summary judgment because Plaintiff failed to
establish this element of his claim. Id.

Contrary to Wells' contention, the Court may not focus
solely upon whether Plaintiff himself was deterred from
exercising his First Amendment rights. See Bennett, 423 F.3d at
1251. Therefore, Magistrate Judge Baker's recommendation that
Plaintiff's loss of his full-time position and full-time pay for

at least one month would deter a person of ordinary firmness from exercising his First Amendment rights was proper.

## H. "De Minimis" Injury Defense

For the first time in his Objection, Wells argues that Plaintiff must prove that a reasonable official would have known that his conduct would result in more than a "de minimis" inconvenience to the exercise of Plaintiff's First Amendment rights to defeat an official's claim of qualified immunity. Dkt. No. 87, at p. 21. First, Wells submits no case law in support of this argument. Id. Second, Wells' proposition conflates two separate inquiries—whether a defendant's conduct created more than a "de minimis" inconvenience to the plaintiff's exercise of First Amendment rights, an issue on the merits, and whether a right has been clearly established, an issue pertaining to qualified immunity. Moreover, the Court need not consider Wells' argument because he failed to raise it before the Magistrate Judge.

## I. Causation

Finally, Wells objects to the Magistrate Judge's recommendation that a genuine dispute of material fact exists regarding the causal link between Plaintiff's protected speech and Wells' alleged retaliatory actions. Id. at p. 23. Wells argues that Plaintiff failed to prove his protected speech caused Wells to change his job status or reduce his pay grade because

Wells would have taken these actions absent Plaintiff's exercise of speech. Id. As discussed above, Plaintiff presented evidence disputing whether Wells' proffered reasons for his conduct—the UNICOR hiring policy, the hiring of additional employees, a shift in factory demand, and a file error—actually motivated Wells' actions. Accordingly, the Court may not resolve these factual disputes concerning causation at summary judgment in favor of Wells, the movant.

In addition, Wells argues that the Court should apply a "but for" causal standard to Plaintiff's claim. Id. at p. 25. However, Wells admits that it is unclear whether a "but for" causal standard applies to inmate retaliation claims in the Eleventh Circuit. Id. at p. 24. Moreover, the Court is not obligated to entertain this argument, as Wells failed to raise it before the Magistrate Judge.

## III. Conclusion

Wells is incorrect that Plaintiff's factual assertions are implausible and, therefore, that no genuine disputes of material fact exist. Wells' objection that Magistrate Judge Baker misconstrued the record and erred in his recommendation that the Court deny Wells' Renewed Motion for Summary Judgment and his claims of qualified immunity is therefore unavailing. Magistrate Judge Baker properly viewed the record in the light most favorable to Plaintiff, the nonmovant, and identified genuine

disputes of material facts contained within the record.  At this

juncture, the Court may not act as factfinder to resolve those

factual disputes in Wells' favor.  Because genuine disputes of

material fact exist regarding whether Wells was actually

motivated by legitimate reasons to change Plaintiff's job status

and pay grade, Wells' Objections, dkt. no. 87, are **OVERRULED**.

The Magistrate Judge's Report and Recommendation, as supplemented

herein, is **ADOPTED** as the opinion of the Court, and Wells'

Renewed Motion for Summary Judgment is **DENIED**.

     **SO ORDERED**, this _____ day of _____, 2016.

                                    LISA GODBEY WOOD, CHIEF JUDGE
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF GEORGIA